FILED

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

2008 JUN 24 PM 2: 33

STEPHEN R. LUDWIG, CLERK
U.S. DISTRICT COURT
FOR THE NORTHERN DISTRICT
OF INDIANA

| | | |
|---|---|---|
| KEVIN D. MILLER | § | |
| | § | |
| v. | § | |
| | § | |
| ACCOUNT MANAGEMENT SERVICES | § | |
| (d/b/a Asset Partners of Western New York, LLC); | § | No. 07 C 231 |
| | § | |
| ACCOUNT MANAGEMENT SERVICES OF | § | |
| NORTH AMERICA, LLC | § | |
| (f/k/a Account Management Services, LLC); | § | |
| | § | Judge Lozano |
| UNIFUND CORPORATION; | § | |
| | § | Magistrate Judge Cosbey |
| MERCHANTS' CREDIT GUIDE COMPANY; | § | |
| | § | |
| FINANCIAL RECOVERY SERVICES, INC.; | § | |
| | § | |
| LVNV FUNDING, LLC; | § | |
| | § | |
| RESURGENT CAPITAL SERVICES, LP; | § | |
| | § | |
| GENESIS FINANCIAL SOLUTIONS, INC; | § | |
| | § | |
| FIRST NATIONAL COLLECTION BUREAU, INC. | § | |
| | § | |

## FIRST AMENDED COMPLAINT

### I. Introduction

**COMES NOW** the Plaintiff Kevin D. Miller ("Miller"), *pro se*, and would assert claims against the above-cited defendants stemming from their conduct of: (1) using or obtaining Miller's personal credit information without a permissible purpose; and/or (2) failing to disclose the identity of third party users of the information to the credit reporting agencies from which the information was obtained. The claims asserted herein include: violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. §§ 1692 *et seq.*; willful and negligent violations of the Fair

Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681 *et seq.*; and invasion of privacy. Miller seeks actual, statutory, and punitive damages, as well as costs and attorney's fees (if it becomes necessary to obtain legal counsel). In support of the claims asserted herein, Miller would show the following:

## II. Jurisdiction and Venue

1. This Court has jurisdiction pursuant to 28 U.S.C. § 1331, 15 U.S.C. § 1681p, and 15 U.S.C. § 1692k(d).

2. Venue in the Northern District of Indiana is proper pursuant to 28 U.S.C. § 1391(b)(2).

## III. Parties

3. Plaintiff Miller is a natural person.

4. Defendant Account Management Services, LLC ("AMS I") is a debt buyer and/or debt collector, regularly involved in the purchase and/or collection of charged-off and "junk debt".

5. Defendant Account Management Services of North America, LLC ("AMS II"), is a New York limited liability company which was formed on October 15, 2004.[1] "AMS II" is a debt buyer and/or debt collector, regularly involved in the purchase and/or collection of charged-off and "junk debt".

6. Defendant Unifund Corporation ("Unifund"), upon information and belief, is a debt buyer and/or debt collector, regularly involved in the purchase and/or collection of charged-off and "junk debt".

---

[1]   "AMS II", which also does (or has previously done) business as "Account Management Services, LLC", should not be confused with the entity of the same name which interjected itself into this action as a "non-party". Although the two entities share common officers and addresses, the entity which identifies itself as a "non-party", is a New York limited liability company which was formed on September 20, 2004.

2

7. Defendant Merchants' Credit Guide Company ("MCG"), upon information and belief, is a debt collector, regularly involved in the collection of charged-off and "junk debt".

8. Defendant Financial Recovery Services, Inc. ("FRS"), upon information and belief, is a debt collector, regularly involved in the collection of charged-off and "junk debt".

9. Defendant LVNV Funding, LLC ("LVNV"), upon information and belief, is a debt buyer and/or debt collector, regularly involved in the purchase and/or collection of charged-off and "junk debt".

10. Defendant Resurgent Capital Services, LP ("Resurgent"), upon information and belief, is a debt buyer and/or debt collector, regularly involved in the purchase and/or collection of charged-off and "junk debt".

11. Genesis Financial Solutions, Inc. ("Genesis"), upon information and belief, is a debt buyer and/or debt collector, regularly involved in the purchase and/or collection of charged-off and "junk debt".

12. Defendant First National Collection Bureau, Inc. ("FNCB"), upon information and belief, is a debt buyer and/or debt collector, regularly involved in the purchase and/or collection of charged-off and "junk debt".

## IV. Factual Allegations

13. Miller's consumer reports contain confidential and personal financial account information. Miller values his privacy interests highly and expects the information contained in his consumer reports to be used or obtained only by persons who have a permissible purpose to use or obtain the information.

### AMS I

14. "AMS I" obtained Miller's personal credit information from Experian on April 19, 2004.

15. Recently, Tracie Kapalski ("Kapaski"), a representative of "AMS I," provided affidavit testimony in the case of *Miller v. Wolpoff & Abramson*, Cause No. 06 C 207, in the U.S. District Court, Northern District of Indiana (Fort Wayne Division). Kapalski stated under oath that "AMS I" did not obtain an ownership interest in a debt owed by Miller until July 21, 2004. (See attached **Exhibit 1**).

16. On the occasion "AMS I" obtained Miller's personal credit information, "AMS I" had not purchased, been assigned or subrogated to any debt owed by Miller.

### AMS II

17. "AMS I" and "AMS II" both used and did business under the same name, and referred to themselves generally as "Account Management Services."

18. "AMS I" and "AMS II", both limited liability companies, shared common members.

19. "AMS I" and "AMS II" shared common management personnel.

20. "AMS I" and "AMS II" shared common employees.

21. "AMS I" and "AMS II" shared office space and/or a physical location at 100 Linden Oaks Drive, Suite 202, Rochester, New York, 14625.

22. "AMS I" and "AMS II" shared office space and/or a physical location at 400 Linden Oaks Drive, Rochester, New York, 14625.

23. "AMS I" and "AMS II" shared the same business purpose – the purchase and collection of "junk debt".

24. "AMS II" used the name "Account Management Services," or some variation thereof, interchangeably with other entities, including with the entity which has interjected itself into this action as a "non-party".[2] After a reasonable opportunity for discovery, there will likely be evidentiary support that "AMS II" shared common business purposes, members, management personnel, employees, equipment, physical locations, addresses, and/or telephone numbers with each of the other entities.

---

[2]   See footnote 1.

## Unifund

25. On multiple occasions since May 2007, Unifund obtained Miller's personal credit information from TransUnion, Experian and Equifax.

26. On the occasions Unifund obtained Miller's personal credit information, Unifund had not purchased, been assigned or subrogated to any debt owed by Miller.

27. After a reasonable opportunity for discovery, there will likely be evidentiary support that Unifund regularly uses or obtains consumers' personal credit information from consumer reporting agencies for the purpose of collecting debts.

28. If a debt owed by Miller was assigned to Unifund by a third party, Unifund failed to disclose the identity of the third-party to TransUnion, Experian and Equifax.

## MCG

29. MCG obtained personal credit information concerning Miller from Experian on or about July 26, 2006.

30. Via an undated and unsigned letter received by Miller on or about August 18, 2007 (attached hereto as **Exhibit 2**), MCG purported to have obtained the information on behalf of Resurgent.

31. Later, or about August 27, 2007, Ken Hill (a/k/a Ken Hughes), Senior Vice-President of MCG, advised Miller via telephone that MCG obtained information concerning Miller from Experian on behalf of LVNV.

32. After a reasonable opportunity for discovery, there will likely be evidentiary support that MCG regularly uses or obtains information concerning consumers from consumer reporting agencies for the purpose of collecting debts on behalf of third parties.

33. On the occasion MCG obtained Miller's personal credit information from Experian, MCG possessed no ownership interest in a debt owed by Miller.

34. On the occasion MCG obtained Miller's personal credit information from Experian, MCG failed to disclose to Experian the identity of LVNV or Resurgent.

35. LVNV and Resurgent deny that MCG was acting on their behalf when MCG obtained information concerning Miller from Experian.

## FRS

36. FRS obtained Miller's personal credit information from TransUnion on or about July 14, 2005.

37. After a reasonable opportunity for discovery, there will likely be evidentiary support that FRS regularly uses or obtains consumers' personal credit information for the purpose of collecting debts on behalf of third parties.

38. FRS obtained Miller's personal credit information from TransUnion for the purpose of collecting a debt on behalf of LVNV and/or Resurgent.

39. On the occasion FRS obtained Miller's personal credit information from TransUnion, FRS possessed no ownership interest in a debt owed by Miller.

40. On the occasion FRS obtained Miller's personal credit information from TransUnion, FRS failed to disclose to Tran Union the identity of LVNV or Resurgent.

## Genesis

41. Genesis obtained Miller's consumer report from Equifax during June 2007.

42. On the occasion Genesis obtained Miller's personal credit information, Genesis had not purchased, been assigned or subrogated to any debt owed by Miller.

43. After a reasonable opportunity for discovery, there will likely be evidentiary support that Genesis regularly uses or obtains consumers' personal credit information from consumer reporting agencies for the purpose of collecting debts.

44. If a debt owed by Miller was assigned to Genesis by a third party, Genesis failed to disclose to Equifax the identity of the third-party.

6

## FNCB

45. FNCB obtained personal credit information concerning Miller from TransUnion during April 2007.

46. On the occasion FNCB obtained Miller's personal credit information, FNCB had not purchased, been assigned or subrogated to any debt owed by Miller.

47. After a reasonable opportunity for discovery, there will likely be evidentiary support that FNCB regularly uses or obtains consumers' personal credit information from consumer reporting agencies for the purpose of collecting debts.

48. If a debt owed by Miller was assigned to FNCB by a third party, FNCB failed to disclose to TransUnion the identity of the third party.

[THIS SPACE INTENTIONALLY LEFT BLANK]

## V. Theories of Liability

### A. Theories of Liability against "AMS I"

49. The allegations set forth in Paragraphs 3, 4, and 14-16, above, establish liability against "AMS I" under the following legal theories:

   a. Invasion of privacy; and

   b. Willful (or negligent) violation of Section 1681b(f)(1) of the FCRA in that "AMS I" had not purchased, been assigned or subrogated to a debt owed by Miller and therefore willfully (or negligently) obtained Miller's personal credit information without a permissible purpose.

50. **WHEREFORE,** Miller seeks damages for "AMS I" invasion of his privacy interests and violation of his right to control to whom his personal credit information is disseminated and how it is used. Judgment is therefore demanded against "AMS I" pursuant to Sections 1681n (or 1681o) of the FCRA and common law to include the following:

   a. Compensatory damages in the amount of $50,000;

   b. Punitive damages in the amount of $500,000 to serve the public interest in deterring similar and future conduct, and so that "AMS I" may be punished for willfully engaging in illicit conduct which invades the privacy interests of consumers, facilitates identity theft, and enables fraud; and

   c. Costs associated with pressing this action.

[THIS SPACE INTENTIONALLY LEFT BLANK]

## B. Theories of Liability against "AMS II"

51. The facts as set forth at Paragraphs 3, 5, and 17-24, above, demonstrate that "AMS I" and "AMS II" were controlled and operated as one business enterprise. Equity dictates that "AMS II" be held jointly liable with "AMS I" under the following legal theories:

    a.  Invasion of privacy; and

    b.  Willful (or negligent) violation of Section 1681b(f)(1) of the FCRA in that "AMS I" had not purchased, been assigned or subrogated to a debt owed by Miller and therefore willfully (or negligently) obtained Miller's personal credit information without a permissible purpose.

52. **WHEREFORE**, Miller seeks damages for "AMS II" invasion of his privacy interests and violation of his right to control to whom his personal credit information is disseminated and how it is used. Judgment is therefore demanded against "AMS II" pursuant to Sections 1681n (or 1681o) of the FCRA and common law to include the following:

    a.  Compensatory damages in the amount of $50,000;

    b.  Punitive damages in the amount of $500,000 to serve the public interest in deterring similar and future conduct, and so that "AMS II" may be punished for willfully engaging in illicit conduct which invades the privacy interests of consumers, facilitates identity theft, and enables fraud;

    c.  Costs associated with pressing this action; and

    d.  Attorney's fees (if it becomes necessary for Miller to obtain legal counsel).

### [THIS SPACE INTENTIONALLY LEFT BLANK]

## C. Theories of Liability against Unifund

53. The allegations set forth in Paragraphs 3, 6, and 25-27, above, establish liability against Unifund under the following legal theories:

    a. Invasion of privacy;

    b. Violation of Section 1692f in that Unifund's conduct of repeatedly obtaining Miller's consumer reports from TransUnion, Experian and Equifax to collect a debt it had not purchased, been assigned, or subrogated to, constituted an unfair or unconscionable means to collect or attempt to collect a debt;

    c. Violation of Section 1692e(10) in that Unifund's conduct of repeatedly obtaining Miller's consumer reports from TransUnion, Experian and Equifax to collect a debt it had not purchased, been assigned, or subrogated to, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller; and

    d. Willful (or negligent) violation of Section 1681b(f)(1) of the FCRA in that Unifund had not purchased, been assigned, or subrogated to a debt owed by Miller and therefore willfully (or negligently) repeatedly obtained Miller's personal credit information without a permissible purpose.

54. Alternatively, if Unifund obtained Miller's personal credit information for the purpose of collecting a debt on behalf of a third party, and failed to disclose the identity of the third party to TransUnion, Experian or Equifax, (see Paragraph 28, above), liability is established against Unifund under the following legal theories:

    a. Violation of Section 1692e(10) in that Unifund's conduct of repeatedly obtaining Miller's personal credit information from TransUnion, Experian, and Equifax without disclosing the identity of the third party as the prospective- and/or end-user of the information, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller;

    b. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasions Unifund obtained Miller's personal credit information from TransUnion, Experian and Equifax for the purpose of collecting a debt on behalf a third party, Unifund willfully (or negligently) failed to disclose to those consumer reporting agencies the identity of the third

party as a potential user of the information as required by the certification process set forth at Section 1681e(a); and/or

c. Willful (or negligent) violation of Section 1681e(e)(1)(A) of the FCRA in that, on the occasions Unifund obtained Miller's personal credit information from TransUnion, Experian and Equifax for the purpose of collecting a debt on behalf a third party, Unifund willfully (or negligently) failed to disclose to the consumer reporting agencies the identity of the third party as the end-user of the information.

55. **WHEREFORE**, Miller seeks damages for Unifund's repeated invasions of his privacy interests and violations of his right to control to whom his personal credit information is disseminated and how it is used. Judgment is therefore demanded against Unifund pursuant to Sections 1681n (or 1681o) of the FCRA, Section 1692k(a) of the FDCPA, and common law to include the following:

   a. Statutory damages of $1,000 (for FDCPA violation);

   b. Compensatory damages in the amount of $150,000;

   c. Punitive damages in the amount of $1,500,000 to serve the public interest in deterring similar and future conduct, and so that Unifund may be punished for willfully engaging in illicit conduct which invades the privacy interests of consumers, facilitates identity theft, and enables fraud;

   d. Costs associated with pressing this action; and

   e. Attorney's fees (if it becomes necessary for Miller to obtain legal counsel).

## [THIS SPACE INTENTIONALLY LEFT BLANK]

## D. Theories of Liability against MCG

56. The allegations set forth in Paragraphs 3, 7 and 29-34, above, establish liability against MCG under the following legal theories:

   a. Violation of Section 1692e(10) in that MCG's conduct of obtaining information concerning Miller from Experian without disclosing the identity of LVNV and/or Resurgent as the prospective- and/or end-users of the information, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller;

   b. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasion MCG obtained information concerning Miller from Experian for the purpose of collecting a debt on behalf of LVNV or Resurgent, MCG willfully (or negligently) failed to disclose to Experian the identity of LVNV or Resurgent as potential users of the information as required by the certification process set forth at Section 1681e(a); and/or

   c. Willful (or negligent) violation of Section 1681e(e)(1)(A) of the FCRA in that, on the occasion MCG obtained information concerning Miller from Experian for the purpose of collecting a debt on behalf of LVNV or Resurgent, MCG willfully (or negligently) failed to disclose to Experian the identity of LVNV or Resurgent as end-users of the information.

57. Alternatively, if MCG had not been authorized to collect a debt on behalf of LVNV and/or Resurgent on the occasion MCG obtained information concerning Miller from Experian, (see Paragraph 35, above), liability is established against MCG under the following legal theories:

   a. Invasion of privacy;

   b. Violation of Section 1692f in that MCG's conduct of obtaining information concerning Miller from Experian to collect a debt it had not purchased, been assigned, or subrogated to, constituted an unfair or unconscionable means to collect or attempt to collect a debt;

   c. Violation of Section 1692e(10) in that MCG's conduct of obtaining information concerning Miller from Experian to collect a debt it had not purchased, been assigned, or subrogated to, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller;

d. Willful (or negligent) violation of Section 1681b(f)(1) of the FCRA in that MCG had not purchased, been assigned, or subrogated to a debt owed by Miller and therefore willfully (or negligently) obtained information concerning Miller from Experian without a permissible purpose; and

e. Violation of Section 1681q of the FCRA in that MCG had not purchased, been assigned, or subrogated to a debt owed by Miller and therefore knowingly and willfully obtained information concerning Miller from Experian under false pretenses.

58. **WHEREFORE**, Miller seeks damages for MCG's invasion of his privacy interests and violation of his right to know to whom his personal credit information is disseminated and how it is used. Judgment is therefore demanded against MCG pursuant to Sections 1681n (or 1681o) of the FCRA, Section 1692k of the FDCPA, and common law to include:

a. Statutory damages of $1,000 (for FDCPA violation);

b. Compensatory damages in the amount of $100,000;

c. Punitive damages in the amount of $1,000,000 to serve the public interest in deterring similar and future conduct, and so that MCG may be punished for willfully engaging in illicit conduct which invades the privacy interests of consumers, facilitates identity theft, and enables fraud;

d. Costs associated with pressing this action; and

d. Attorney's fees (if it becomes necessary for Miller to obtain legal counsel).

[THIS SPACE INTENTIONALLY LEFT BLANK]

13

### E. Theories of Liability against LVNV

59. The allegations set forth in Paragraphs 3, 9, 29-34, and 36-40, above, renders LVNV liable under the following legal theories:

    a. Violation of Section 1692e(10) in that MCG's conduct of obtaining information concerning Miller from Experian without disclosing the identity of LVNV as a prospective- and/or end-user of the information, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller;

    b. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasion MCG obtained information concerning Miller from Experian for the purpose of collecting a debt on behalf of LVNV, MCG willfully (or negligently) failed to disclose to Experian the identity of LVNV as a potential user of the information as required by the certification process set forth at Section 1681e(a);

    c. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasion FRS obtained Miller's personal credit information from TransUnion for the purpose of collecting a debt on behalf of LVNV, LVNV willfully (or negligently) failed to disclose to TransUnion its identity as a potential user of the information as required by the certification process set forth at Section 1681e(a); and/or

    d. Willful (or negligent) violation of Section 1681e(e)(1)(A) of the FCRA in that, on the occasion MCG obtained information concerning Miller from Experian for the purpose of collecting a debt on behalf of LVNV, MCG willfully (or negligently) failed to disclose to Experian the identity of LVNV as an end-user of the information.

60. **WHEREFORE**, judgment is therefore demanded against LVNV pursuant to Sections 1681n (or 1681o) of the FCRA, Section 1692k of the FDCPA, and common law to include any statutory, compensatory, and punitive damages for which MCG and/or FRS may be found liable.

## F. Theories of Liability against Resurgent

61. The allegations set forth in Paragraphs 3, 10, 29-34, and 36-40, above, renders Resurgent liable under the following legal theories:

    a. Violation of Section 1692e(10) in that MCG's conduct of obtaining information concerning Miller from Experian without disclosing the identity of Resurgent as a prospective- and/or end-user of the information, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller;

    b. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasion MCG obtained information concerning Miller from Experian for the purpose of collecting a debt on behalf of Resurgent, MCG willfully (or negligently) failed to disclose to Experian the identity of Resurgent as a potential user of the information as required by the certification process set forth at Section 1681e(a);

    c. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasion FRS obtained Miller's personal credit information from TransUnion for the purpose of collecting a debt on behalf of Resurgent, Resurgent willfully (or negligently) failed to disclose to TransUnion its identity as a potential user of the information as required by the certification process set forth at Section 1681e(a); and/or

    d. Willful (or negligent) violation of Section 1681e(e)(1)(A) of the FCRA in that, on the occasion MCG obtained information concerning Miller from Experian for the purpose of collecting a debt on behalf of Resurgent, MCG willfully (or negligently) failed to disclose to Experian the identity of Resurgent as an end-user of the information.

62. **WHEREFORE**, judgment is therefore demanded against Resurgent pursuant to Sections 1681n (or 1681o) of the FCRA, Section 1692k of the FDCPA, and common law to include any statutory, compensatory, and punitive damages for which MCG and/or FRS may be found liable.

## G. Theories of Liability against Genesis

63. The allegations set forth in Paragraphs 3, 11, and 41-43, above, establish liability against Genesis under the following legal theories:

   a. Invasion of privacy;

   b. Violation of Section 1692f in that Genesis's conduct of obtaining Miller's personal credit information from Equifax to collect a debt it had not purchased, been assigned, or subrogated to, constituted an unfair or unconscionable means to collect or attempt to collect a debt;

   c. Violation of Section 1692e(10) in that Genesis's conduct of obtaining information concerning Miller from Equifax to collect a debt it had not purchased, been assigned, or subrogated to, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller; and

   d. Willful (or negligent) violation of Section 1681b(f)(1) of the FCRA in that Genesis had not purchased, been assigned, or subrogated to a debt owed by Miller and therefore willfully (or negligently) obtained Miller's personal credit information from Experian without a permissible purpose.

64. Alternatively, if Genesis obtained Miller's personal credit information for the purpose of collecting a debt on behalf of a third party, and failed to disclose the identity of the third party to Equifax, (see Paragraph 44, above), liability is established against Genesis under the following legal theories:

   a. Violation of Section 1692e(10) in that Genesis's conduct of obtaining Miller's personal credit information from Equifax without disclosing the identity of the third party as the prospective- and/or end-user of the information, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller;

   b. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasion Genesis obtained Miller's personal credit information from Equifax for the purpose of collecting a debt on behalf a third party, Genesis willfully (or negligently) failed to disclose to Equifax the identity of the third party as a potential user of the information as required by the certification process set forth at Section 1681e(a); and/or

   c. Willful (or negligent) violation of Section 1681e(e)(1)(A) of the FCRA in that, on the occasion Genesis obtained Miller's personal credit information

16

from Equifax for the purpose of collecting a debt on behalf a third party, Genesis willfully (or negligently) failed to disclose to Equifax the identity of the third party as the end-user of the information.

65. **WHEREFORE**, Miller seeks damages for Genesis's invasion of his privacy interests and violation of his right to know to whom his personal credit information is disseminated and how it is used. Judgment is therefore demanded against Genesis pursuant to Sections 1681n (or 1681o) of the FCRA, Section 1692k of the FDCPA, and common law to include:

    a. Statutory damages of $1,000 (for FDCPA violation);

    b. Compensatory damages in the amount of $100,000;

    c. Punitive damages in the amount of $1,000,000 to serve the public interest in deterring similar and future conduct, and so that Genesis may be punished for willfully engaging in illicit conduct which invades the privacy interests of consumers, facilitates identity theft, and enables fraud;

    d. Costs associated with pressing this action; and

    e. Attorney's fees (if it becomes necessary for Miller to obtain legal counsel).

[THIS SPACE INTENTIONALLY LEFT BLANK]

## H. Theories of Liability against FNCB

66. The allegations set forth in Paragraphs 3, 12, and 45-47, above, establish liability against FNCB under the following legal theories:

   a. Invasion of privacy;

   b. Violation of Section 1692f in that FNCB's conduct of obtaining information concerning Miller from TransUnion to collect a debt it had not purchased, been assigned, or subrogated to, constituted an unfair or unconscionable means to collect or attempt to collect a debt;

   c. Violation of Section 1692e(10) in that FNCB's conduct of obtaining information concerning Miller from TransUnion to collect a debt it had not purchased, been assigned, or subrogated to, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller; and

   d. Willful (or negligent) violation of Section 1681b(f)(1) of the FCRA in that FNCB had not purchased, been assigned, or subrogated to a debt owed by Miller and therefore willfully (or negligently) obtained Miller's personal credit information without a permissible purpose.

   e. Violation of Section 1681q of the FCRA in that FNCB had not purchased, been assigned, or subrogated to a debt owed by Miller and therefore knowingly and willfully obtained information concerning Miller from TransUnion under false pretenses.

67. Alternatively, if FNCB obtained information concerning Miller from TransUnion for the purpose of collecting a debt on behalf of a third party, and failed to disclose the identity of the third party to TransUnion, (see Paragraph 48, above), liability is established against FNCB under the following legal theories:

   a. Violation of Section 1692e(10) in that FNCB's conduct of obtaining information concerning Miller from TransUnion without disclosing the identity of the third party as the prospective- and/or end-user of the information, constituted the use of a false representation or deceptive means to collect or attempt to collect a debt or to obtain information concerning Miller;

   b. Willful (or negligent) violation of Section 1681b(f)(2) of the FCRA in that, on the occasion FNCB obtained information concerning Miller from TransUnion for the purpose of collecting a debt on behalf of a third party,

FNCB willfully (or negligently) failed to disclose to TransUnion the identity of the third party as a potential user of the information as required by the certification process set forth at Section 1681e(a); and/or

c. Willful (or negligent) violation of Section 1681e(e)(1)(A) of the FCRA in that, on the occasion FNCB obtained information concerning Miller from TransUnion for the purpose of collecting a debt on behalf of a third party, MCG willfully (or negligently) failed to disclose to TransUnion the identity of the third party as the end-user of the information.

68. **WHEREFORE**, Miller seeks damages for FNCB's invasion of his privacy interests and violation of his right to control to whom his personal credit information is disseminated and how it is used. Judgment is therefore demanded against FNCB pursuant to Sections 1681n (or 1681o) of the FCRA, Section 1692k(a) of the FDCPA, and common law to include:

a. Statutory damages of $1,000 (for FDCPA violation);

b. Compensatory damages in the amount of $100,000;

c. Punitive damages in the amount of $1,000,000 to serve the public interest in deterring similar and future conduct, and so that FNCB may be punished for willfully engaging in illicit conduct which invades the privacy interests of consumers, facilitates identity theft, and enables fraud;

d. Costs associated with pressing this action; and

e. Attorney's fees (if it becomes necessary for Miller to obtain legal counsel).

Respectfully Submitted,

Kevin D. Miller
431 Ridgemoor Drive #4
Fort Wayne, Indiana 46825
(317) 450-0611

# EXHIBIT 1

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA

KEVIN D. MILLER )
)
    Plaintiff )
)
vs. )
)   Civil Action No.: 1:06-CV-0207 TLS
WOLPOFF & ABRAMSON, LLP )
CENTURION CAPITAL CORPORATION )
)
    Defendants )

The undersigned hereby declares and affirms under the penalties of perjury that the contents of this Affidavit are true and correct:

1.    I served in the capacity of Accounts Receivable Manager for Asset Partners of Western New York, LLC (formerly known as Account Management Services, LLC). In this position I had access to and supervision over the business records of Asset Partners of Western New York, LLC (formerly known as Account Management Services, LLC), which are kept in the ordinary and normal course of its operations.

2.    On July 21, 2004, Great Seneca Financial Corporation assigned to Asset Partners of Western New York, LLC (formerly known as Account Management Services, LLC) all of its rights, title and interest in and to a credit account originated from Providian National Bank and owed by Kevin D. Miller, Plaintiff. (Exhibit 3)

3.    On November 19, 2004, Asset Partners of Western New York, LLC (formerly known as Account Management Services, LLC) assigned to Madison Street Investments, LLC all of its rights, title and interest in and to a credit account originated from Providian National Bank and owed by Kevin D. Miller, Plaintiff. (Exhibit 4)

4.    That the assignment was for account xxxx-xxxx-xxxx-2720.

Date:   8/9/07

                        Notary Public

Witness my hand and official seal.
My Commission Expires:   9/22/07

JOHN SORTINO
NOTARY PUBLIC-STATE OF NEW YORK
No. 01SO6098827
Qualified in Erie County
Commission Expires September 22, 2011

1


EXHIBIT
D

# EXHIBIT 2

ESTABLISHED 1896

# Merchants' Credit Guide Co.

INCORPORATED 1899

223 W. JACKSON BLVD. • SUITE 900, CHICAGO, IL 60606 • TEL 312-360-3000 • FAX 312-360-3024

Kevin D. Miller
431 Ridgemoor Drive, #4
Fort Wayne, IN 46825

**RE:**    15-068361409

To Whom It May Concern:

I would like to thank you for bringing your concerns to our attention. We understand the issues associated with your inquiry to be the following:

1. Mr. Miller has received communications regarding an account that was listed with Merchants Credit Guide Co. for collections.

2. Mr. Miller disputes the validity of the debt in question.

3. Mr. Miller also expressed concerns about MCG reporting to the credit bureau.

4. Mr. Miller suggests that MCG may be in violation of the FCRA if unable to provide documentation on this account.

Our responses to the issues related to Mr. Miller's inquiry are as follows:

1. Mr. Miller's account was listed in our office on July 19, 2006 for collections by one of our clients, Resurgent. Resurgent had acquired this account in a debt purchase. KMART is the original creditor on this account. Merchants' Credit Guide Co. operates as a third party collection agency and does not own Mr. Miller's account. Resurgent has contracted our services to contact Mr. Miller on their behalf to discuss the repayment of the outstanding account.

2. Upon receipt of Mr. Miller's dispute, in accordance with the laws that govern our industry, MCG immediately suspended collection efforts, and requested further documentation from our client in an effort to validate this account. In the event, our client was unable to furnish the documentation requested in a timely manner; we will close the account as a disputed account and returned it to our client.

3. MCG does not report to the credit bureaus on behalf of this client.

4. Merchants' Credit Guide Company is contracted as a third party collection agency to service the debts owed to our clients. This contractual agreement gives MCG the right to contact the consumers listed by our client's for the purpose of collecting their outstanding debts. All contact with Mr. Miller was performed within the legislative guidelines governing the collection industry.

As stated above, we have removed the account in question from active collections. Thank you for this opportunity to respond to your concerns.

Regards,

Karlos Cornish
Compliance Coordinator
Merchants Credit Guide Co.